IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL S. MORROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-331-NJR-DGW |
| ) | |
| AARON HOOD, JAMES CHEATHAM, ) | |
| SEAN STARKWEATHER, RYAN DAVIS, ) | |
| CLINT MAYER, MONICA GREATHOUSE, ) | |
| AIMEE LANG, and UNKNOWN ) | |
| DEFENDANTS. ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Greathouse (Doc. 74) and the Motion for Summary Judgment filed by Defendants Davis, Hood, Lang, Mayer, Starkweather, and Cheatham (Doc. 77) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Plaintiff Paul S. Morrow is an inmate in the custody of the Illinois Department of Corrections currently incarcerated at Shawnee Correctional Center. Plaintiff initiated this action

1

on April 2, 2013 pursuant to 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights while he was incarcerated at Menard Correctional Center ("Menard"). More specifically, Plaintiff's complaint alleges that on October 9, 2012, he was handcuffed and beaten by a number of correctional officers, including Defendants Aaron Hood and James Cheatham. Plaintiff claims that Defendants Clint Mayer, Sean Starkweather, and Ryan Davis failed to protect Plaintiff from this attack and Defendants Aimee Lang and Monica Greathouse failed to adequately treat his injuries. Accordingly, after the Court's initial screening of Plaintiff's complaint, he was allowed to proceed on the following three counts:

> Count 1: Excessive force claim against Defendants Aaron Hood, James Cheatham, and unidentified others.
>
> Count 2: Failure to protect claim against Defendants Sean Starkweather, Ryan Davis, Clint Mayer, and unidentified others.
>
> Count 3: Deliberate indifference claim against Defendants Monica Greathouse, Nurse Aimee Lang, an unidentified optometrist, and an unidentified sick call nurses.

On October 31, 2014, Defendants Hood, Lang, Mayer, Starkweather, Davis, and Cheatham[1] ("IDOC Defendants") filed a motion for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit (Doc. 77). Based on the affidavit of Debbie Knauer, a Chairperson for the Administrative Review Board ("ARB"), Defendants contend that Plaintiff only filed one grievance relevant to this lawsuit and it never received a decision on the merits because it was submitted to the ARB beyond the allowable

---

[1] Defendant Cheatham was not named in Defendants' motion for summary judgment; however, during the Pavey Hearing held on December 16, 2014, counsel for Defendant Cheatham orally motioned for Defendant Cheatham to be joined in the motion for summary judgment filed at Document 77. The Court granted Defendant Cheatham's motion and Document 77 is hereby adopted as to this Defendant.

timeframe (Affidavit of Debbie Knauer, Doc. 78-1, ¶¶ 8-10). In this grievance, dated November 14, 2012, Plaintiff complains of the incidents alleged in this lawsuit (*see* Doc. 78-3). More specifically, Plaintiff complains of being handcuffed by an unknown sergeant and beaten by Officers Hood and Cheatham and, afterward, being refused assistance by Officer Davis and other staff members, and refused medical care by an unknown healthcare worker and nurse Lang (*Id.*). Plaintiff signed and dated this grievance on November 14, 2012; however, there is no indication that this grievance was submitted to either Plaintiff's counselor or the grievance officer for review (*Id.*). The ARB received this grievance on March 11, 2013, and refused to make a determination on the merits as it was submitted beyond the timeframe allowed in Department Rule 504 (*Id.*). Plaintiff filed a timely response to Defendants' Motion (Doc. 81).

Defendant Greathouse also filed a motion for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 74). Defendant Greathouse contends that the grievance attached to Plaintiff's complaint (Doc. 1, pp. 25-26) and purportedly written by Plaintiff on November 14, 2012, is insufficient to exhaust his administrative remedies as there is no evidence that it was submitted prior to January, 2013 for review, beyond the applicable timeframe, and it was not received by the ARB until March 11, 2013, again, well-beyond the applicable timeframe for review. Plaintiff filed a timely response to Defendant Greathouse's Motion (Doc. 81).

A review of the record in this case reveals that there are two separate grievances dated November 14, 2012. The first of such grievances was submitted by Plaintiff as an attachment to his complaint (Doc. 1, pp. 25-26). This grievance was apparently submitted to the Chief Administrative Officer ("CAO") as an emergency and was received on January 16, 2013 (*Id.*).

The CAO reviewed this grievance and determined that an emergency was not substantiated; accordingly, the grievance was returned to Plaintiff and he was directed to file it in the normal manner. Plaintiff then submitted this grievance to a counselor on January 29, 2013, who responded on February 1, 2013 and explained that the grievance "is out of timeframe" (*Id.*). There is no other documentation referencing this particular grievance in the records before the Court. Yet, as mentioned above, there is another grievance, which appears to be an exact copy of the previously mentioned grievance, but it does not have a response from the CAO or a counselor (Doc. 78-3). This grievance was signed by Plaintiff on November 14, 2012 and indicates it was received by the ARB on March 11, 2013 (*Id.*). The ARB responded to this grievance on March 22, 2013, indicating that the merits of the grievance would not be addressed because it was not submitted in the timeframe outlined in Department Rule 504 (*Id.*).

### *Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on December 16, 2014. At the hearing, Plaintiff explained that he filled out a grievance form on November 14, 2012 and made a copy of that grievance before he filed it. Plaintiff testified that he marked this grievance as an emergency, put it in a white envelope addressed to the grievance officer, and placed it in the bars of his cell to be picked up. Plaintiff testified that he never received any response to this grievance.[2] Accordingly, Plaintiff asserted that he hand-delivered a copy of this grievance to his counselor sometime around January 30, 2013. In response to this, the counselor told Plaintiff that his grievance was being submitted

---

[2] The Court notes that later during the hearing Plaintiff indicated that he actually placed two copies of the same grievance in the mail, one addressed to the grievance officer and one to the warden. Plaintiff testified that he did not receive a response to either of these grievances.

outside of the proper timeframe so she refused to respond to it. Plaintiff testified that he believed he was being thwarted in his attempts to exhaust so he decided to file this lawsuit. However, prior to filing this lawsuit he sent yet another copy of his November 14, 2012 grievance to the ARB. This grievance was received on March 11, 2013 and subsequently returned for being submitted beyond the allowable timeframe. During his direct examination by the Court, Plaintiff clearly testified that he never received any response to his grievances dated November 14, 2012 from any individual at Menard. However, during cross-examination, Plaintiff conceded that at the time he filed his complaint he must have had a copy of his grievance with a response from his counselor and the CAO, as it was attached to his complaint.

Defendants argued that Plaintiff's allegations regarding exhaustion are not credible and, when looking at all the evidence surrounding the filing of these grievances, including the responses provided thereto, the evidence supports a finding that the grievances were filed beyond the allowable timeframe.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v.*

*Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

*Exhaustion Requirements under the PLRA*

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting

*Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance form shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint. *Id.* § 504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the circumstances. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative

remedies are not exhausted until the appeal is ruled on by the Administrative Review Board. *See Id.* The Administrative Review Board shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id.* § 504.850(f).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840. If, after receiving a response from the CAO, an offender feels that the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*,

458 F.3d at 684.

*Discussion*

Based on the evidence adduced and arguments made at the hearing, it is recommended that the Court find Plaintiff did not exhaust his administrative remedies prior to filing this suit.

Plaintiff relies on the fact that he was "thwarted" in his attempts to exhaust his administrative remedies as the basis for overcoming Defendants' motions for summary judgment. In particular, in his response to Defendants' motions and at the Pavey Hearing, Plaintiff complained that he never received a response to either grievance he filed on November 14, 2012 and, when he attempted to hand-deliver his November, 2012 grievance to his counselor in January, 2013, she refused to consider it due to its untimeliness. Accordingly, he sent his grievance directly to the ARB for review.

Although the Court understands Plaintiff's alleged version of events, the Court does not find Plaintiff to be credible. First, Plaintiff attached a grievance dated November 14, 2012 to his complaint that included both a response from the CAO and Counselor Summers (Doc. 1, pp. 25-26). Thus, it is clear that Plaintiff did receive a response to his grievance at the institutional level. Second, aside from Plaintiff's self-serving notations that have been hand-written on his grievance[3] and the affidavit of his cellmate Dwayne King[4], there is no indication that this grievance was filed on November 14, 2012.

As suggested by Defendants, when looking at the whole picture, the logical conclusion is

---

[3] Specifically, Plaintiff writes "sent 11-14-12 to counselor [sic] and warden Atchison" on the upper-left hand corner of his grievance (Doc. 1, p. 25). Also, included within the body of his grievance, Plaintiff writes "incident on 10-9-12 — grievance filed 11-14-12 within 60 day limit."
[4] The affidavit of Dwayne King, purportedly written on November 14, 2012, attests that around 9:30 p.m. on November 14, 2012 he witnessed Plaintiff write three grievances and mail two of the grievances, one to the warden and one to counselor Summers (Doc. 1, p. 27).

that this grievance was not filed in November, 2012. Rather, it appears that this grievance was likely filed in January, 2013, beyond the proper timeframe. In support of this finding, the Court notes that one of Plaintiff's notations on this grievance states that it was "sent to GO 1-14-13," which clearly contradicts the other notations made on this grievance and Plaintiff's statements at the Pavey Hearing. Importantly, this grievance was then stamped "Received" by the Grievance Office on January 16, 2013, a date that corresponds appropriately with the submission date of January 14, 2013, and the CAO provided a response on the same day. The CAO found that an emergency was not substantiated and advised Plaintiff to file this grievance in the normal manner. It is apparent that Plaintiff followed this direction, as this grievance was received by Counselor Summers on January 29, 2013, who responded on February 1, 2013. The Court notes that, at the Pavey Hearing, Plaintiff denied having ever submitted a grievance to the CAO in January, 2013, and also denied having received *any* response to his grievance at the institutional level. However, Plaintiff clearly received the CAO's response and submitted his grievance to his counselor. Further, as eventually conceded by Plaintiff at the Pavey Hearing, he certainly received this grievance back from his counselor prior to filing this suit as he attached this grievance to his complaint. The Court notes that Plaintiff's inability to recall ever receiving a response from his counselor to be disingenuous when viewed in light of his meticulous efforts to document the progression of this grievance through the administrative channels at Menard.

      The inconsistencies in Plaintiff's allegations regarding his attempts at exhaustion, coupled with the strong, documentary evidence that this grievance was never submitted until January, 2013, outside the 60 day timeframe, supports a finding that Plaintiff did not properly exhaust his administrative remedies prior to filing this lawsuit.

## RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Monica Greathouse (Doc. 74) and the Motion for Summary Judgment filed by Defendants Aaron Hood, Aimee Lang, Clint Mayer, Sean Starkweather, Ryan Davis, and James Cheatham (Doc. 77) be **GRANTED**; that the Court find that Plaintiff did not exhaust his administrative remedies against these Defendants prior to filing suit; that these Defendants be **DISMISSED WITHOUT PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: April 28, 2015**

　　　　　　　　　　　　　　　　　　　　　　　**DONALD G. WILKERSON**
　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**